**Hollis B. MEMBERS, Plaintiff–Appellant,**

v.

**Michael PAIGE, et al., Defendants–Appellees.**

**No. 97–1559.**

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 19, 1998.

Decided March 30, 1998.

Hollis B. Members, pro se.

Andrew L. Hedges, Office of the Atty. Gen., Indianapolis, IN, for Defendants–Appellees.

Before FAIRCHILD, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Hollis Members contends in this suit under 42 U.S.C. § 1983 that prison guards used excessive force to administer an injection. Defendants moved for summary judgment. Three days before Members' response was due, the district court filed an opinion granting summary judgment in favor of one defendant (and dismissing the claim under the eleventh amendment, to the extent Members sought damages against the defendants in their official capacities) but adding:

> With reference to the remaining four correctional officers, this court is reluctant, on the basis of the present state of the record, to grant summary judgment for the correctional officers ... primarily as a result of the recent decision in *Dorsey v. St. Joseph County*, [98 F.3d 1527 (7th Cir. 1996) ].... The trial of this case will be a bench trial and the same will be referred to Magistrate Judge Robin D. Pierce to conduct the same and to make an appro-

priate report and recommendation to this court.

The parties have not consented to decision by a magistrate judge under 28 U.S.C. § 636(c), so the court lacked authority to refer the case for a bench trial. But because the plaintiff is a prisoner and the case concerns "conditions of confinement", see *McCarthy v. Bronson*, 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991), the judge could refer the case to a magistrate judge for a hearing and recommendation under § 636(b)(1)(B), subject to *de novo* review by the district judge. See also Fed.R.Civ.P. 72(b). We therefore interpret the reference as one for an evidentiary hearing rather than a bench trial.

Magistrate Judge Pierce scheduled a hearing at the prison. An order entered on November 22 following a telephonic conference required the parties to file lists of witnesses and exhibits and drafts of a final pretrial order. Yet the district judge continued to participate in management of the case. On November 6, five days after saying that defendants' unopposed submissions did not support summary judgment, the district judge extended until December 2 the time for Members to file his response. The scheduling order of November 22 did not mention the motion for summary judgment, perhaps because only the taking of evidence had been referred to the magistrate judge. On December 17 the district judge entered an order giving the magistrate judge "authority ... to make a report and recommendation after a bench trial or, in the alternative, to take up defendants' motion for summary judgment ... and make a report and recommendation with regard to an appropriate disposition therefor". In mid-February 1997 the magistrate judge recommended that summary judgment be granted. His full analysis reads:

> Defendants' submissions in support of their summary judgment motion satisfy their burden under Rule 56. Mr. Members has failed to satisfy his burden of coming forth with evidence sufficient to withstand a motion for a directed verdict.... Accordingly, the record before the court discloses no genuine issue of material fact, and it is clear that all defendants are entitled to judgment as a matter of law on all remaining claims.

Less than two weeks later, the district judge approved this recommendation following a boilerplate recitation of the Rule 56 standard but no discussion of the evidence.

■ Two problems require a remand for further proceedings. First, the disposition violates Circuit Rule 50. The district judge did not explain why, after examining the same record in November 1996 and February 1997, he reached contradictory conclusions. *Dorsey*, which the judge deemed important in November, was not mentioned in February. Rule 50 requires a statement of reasons for the decision that ends the case. A generic explanation that could apply to every suit is the equivalent of no explanation. To satisfy Rule 50 the court must analyze the facts in relation to the law; neither the magistrate judge nor the district judge did that. Second, it seems likely that Members disregarded the motion for summary judgment because he thought a response unnecessary. Before his response was due, the district judge effectively denied the motion and set the case for trial. The magistrate judge held a scheduling conference and entered an order specifying standard pretrial steps, not a response to a motion for summary judgment. Either the magistrate judge or the district judge should have warned Members that a response was required notwithstanding appearances to the contrary. On remand Members must be given an opportunity to file a response, with evidentiary support, before the court again addresses defendants' motion.

■ We mentioned earlier that the district judge referred the case to a magistrate judge for a bench trial. Members wants a jury trial, but his demand was made 46 days after defendants filed their answer, beyond the 10 days that Fed.R.Civ.P. 38(b) allows. Rule 38(d) adds: "The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury." The district judge was unwilling to relieve Members from his waiver. The judge recognized that *Merritt v. Faulkner*, 697 F.2d 761, 767 (7th Cir.1983), requires district courts to accept untimely jury demands by

unrepresented plaintiffs unless "strong and compelling reasons" counsel otherwise, but the court declined to follow this approach. Like Members, Merritt was a prisoner proceeding *pro se*; unlike Members, Merritt claimed to be blind. (But see *Merritt v. Faulkner*, 823 F.2d 1150 (7th Cir.1987).) The district judge wrote:

> This court has carefully revisited *Merritt* and given special attention to the factual setting of that case and particularly the physical disabilities of the plaintiff in that case. It is beyond any doubt that *Merritt* remains a valid and binding precedent in this district on the issue of the timeliness of a jury demand by a disabled *pro se* prisoner plaintiff. Making a close comparison of the factual setting, including the personal characteristics of this plaintiff with those in *Merritt*, this court most respectfully declines to exercise its discretion to grant this plaintiff a trial by jury which is clearly out of time, both as to his complaint and as to his amended complaint. This plaintiff has none of the disabling characteristics that Billy Merritt had there.

Some language in *Merritt* might be read to support this distinction. Wrapping up its exposition of the issue, the panel stated: "[T]his is not a case of mere inadvertence of counsel. This motion was made by a blind *pro se* litigant who indicated from his first pleadings ... that he did not feel competent to represent himself in court." 697 F.2d at 767. But the rest of the discussion in *Merritt* makes nothing of the plaintiff's eyesight. It relies instead on two themes that are equally applicable to Members: the plaintiff's *pro se* status, and the district court's power under Fed.R.Civ.P. 39(b) to grant an untimely request for a jury trial.

■ *Merritt* could be understood to say that rules of procedure should not be enforced to the detriment of unrepresented litigants. Later cases, however, express a different perspective. One year after we decided *Merritt*, the Supreme Court held that Fed.R.Civ.P. 3, which requires plaintiffs to initiate cases by filing "complaints" rather than other documents, applies equally to all litigants, including those proceeding *pro se*.

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). In 1993 an unrepresented plaintiff contended that the courts should excuse premature commencement of litigation under the Federal Tort Claims Act. The Court replied:

> The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command. Moreover, given the clarity of the statutory text, it is certainly not a "trap for the unwary." It is no doubt true that there are cases in which a litigant proceeding without counsel may make a fatal procedural error, but the risk that a lawyer will be unable to understand the exhaustion requirement is virtually nonexistent. Our rules of procedure are based on the assumption that litigation is normally conducted by lawyers. While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed, see *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), and have held that some procedural rules must give way because of the unique circumstance of incarceration, see *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (*pro se* prisoner's notice of appeal deemed filed at time of delivery to prison authorities), we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. As we have noted before, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980).

*McNeil v. United States*, 508 U.S. 106, 112–13, 113 S.Ct. 1980, 1983–84, 124 L.Ed.2d 21 (1993) (footnotes omitted). To put this differently, rules apply to uncounseled litigants and must be enforced. To the extent *Merritt* held that "procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without

counsel", it cannot be considered authoritative after *McNeil.*

■ But of course implementation of many procedural rules entails exercise of discretion. A mistaken delay in requesting a jury trial may be excused under the terms of Fed.R.Civ.P. 39(b):

> Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

Discretion implies the power to say no, but when deciding whether to grant or deny such a motion a judge is entitled to consider all circumstances, including lack of counsel, that may have contributed to the delay. Rule 39(b) does not require litigants to surmount a hurdle such as "excusable neglect"; it is an open-ended grant of discretion, and relief under this rule cannot sensibly be limited to the blind.

Although *Merritt* quoted from and relied on Rule 39(b), the district judge in this case did not discuss considerations pro and con but rather appeared to believe that unless *pro se* litigants are outside the scope of the federal rules altogether, then an untimely jury demand must be disallowed. Neither *Merritt* nor *McNeil* supports such a Manichaean dualism under which, if uncounseled litigants do not always win, then they always lose. A thoughtful exercise of discretion is what Rule 39(b) requires.

■ The district judge did not identify any "strong and compelling" reasons why a jury trial would be inappropriate. The use of this phrase in *Merritt* may have been a rhetorical flourish rather than a legal standard, or perhaps it was designed to convey the idea that Rule 38 simply may not be enforced against unrepresented litigants. It has not been used as the standard in any later opinion in this circuit. (*Kotsilieris v. Chalmers,* 966 F.2d 1181, 1187 (7th Cir.1992), quotes the language but was not concerned with the interaction between Rule 38(d) and Rule 39(b).) If taken as a legal standard this language would strip district judges of the

discretion Rule 39(b) confers and nullify the waiver consequence specified in Rule 38(d). Given the constitutional status of the parties' right to trial by jury, what kind of objection to a jury trial could be "compelling"? Yet many cases, several of which *Merritt* cited, sustain decisions by district judges to enforce the Rule 38 deadline without proof of "compelling" reasons. *Merritt* distinguished those cases on the ground that the litigants had lawyers, but it is hard to see how after *McNeil* this fact can justify a legal standard that effectively forecloses application of a federal rule to *pro se* litigants. *Merritt* did not discuss the significance of Rule 38(d), though it must mean that, if the deadline in Rule 38(b) passes without a jury demand, the presumption is against rather than in favor of a jury trial.

"Strong and compelling reasons" had its genesis in *Albert v. R.P. Farnsworth & Co.,* 176 F.2d 198 (5th Cir.1949). See Charles Alan Wright & Arthur R. Miller, 9 *Federal Practice & Procedure* § 2334 at 186 n.7 (1995). Other appellate courts have articulated a standard that is as unfavorable to belated motions as the fifth circuit's is favorable. See Wright & Miller at 186 n.8 (collecting cases). Yet even the fifth circuit has affirmed orders exercising discretion under Rule 39(b) against the holding of a jury trial, e.g., *United States v. Lochamy,* 724 F.2d 494 (5th Cir.1984)—for the rule's grant of discretion implies deferential appellate review. See *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 399–405, 110 S.Ct. 2447, 2457–61, 110 L.Ed.2d 359 (1990); *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928 (7th Cir.1989) (en banc). Thus the fifth circuit itself must use this language not as a rule of law nullifying Rule 38 but rather to imply a cast of mind favorable to jury trials.

■ Rule 38(d) means that the district judge may require a litigant who asks belatedly for a jury trial to offer a reason for not meeting the deadline in Rule 38(b). Once such a reason has been advanced, the district court "ought to approach each application under Rule 39(b) with an open mind and an eye to the factual situation of that particular case, rather than with a fixed policy".

Wright & Miller at 189. *Merritt* quoted this language with approval, see 697 F.2d at 767, although it appears to be at odds with the panel's demand for a "compelling" reason. If there is to be any presumption, it is the one stated in Rule 38(d); but applications under Rule 39(b) should be entertained with an open mind, just as district judges entertain motions to amend the complaint after the power to do so as of right has expired. Lack of legal assistance may supply (or be) a good reason for a favorable exercise of discretion under Rule 39(b).

If on remand the court denies defendants' motion for summary judgment it must reconsider Members' request for trial by jury. When doing so it should give Members an opportunity to explain why he asked for a jury trial after the time set out in Rule 38(b) had expired. Then the judge should exercise discretion under Rule 39(b) in light of that reason and the other circumstances, such as the fact that neither the parties nor the court appears to have taken any steps that will need to be done over (or done differently) if trial is by jury. And if the court exercises discretion under Rule 39(b) in favor of a jury trial, it must withdraw the reference to the magistrate judge under § 636(b)(1)(B).

REVERSED AND REMANDED.